UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                              CASE NO.: 24-14058-CR-MIDDLEBROOKS

DENZIL STEWART,

    Defendant.
_____/

## MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE

COMES NOW the Defendant DENZIL STEWART by and through his undersigned counsel and moves this Court for the entry of an order granting him a new trial as to Counts 1 and including 3 of the indictment and as grounds therefore states as follows:

1. That this motion is made pursuant to Rule 33(a) and (b)(1) of the Federal Rules of Criminal Procedure which states that "(u)pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment . . . Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the

appellate court remands the case."

2. Since this defendant is pending sentencing, it is respectfully requested that an evidentiary hearing be conducted prior to the imposition of sentence and therefore prior to the commencement period within which to file a notice of appeal.

### *Statement of the Case*

On November 7, 2024, a grand jury returned a six-count indictment against CARLOS AVILA which charged in Count 1 conspiracy to possess with the intent to distribute more than 50 grams of methamphetamine and well as five (5) separate substantive distribution of methamphetamine counts. (DE #3) After his second appearance before the magistrate judge on November 18, 2024, CARLOS AVILA was released on an agreed upon ten (10%) bond. (DE #13, 14)

Prior to the indictment in this case, this matter was a state court case in Indian River County. (See PSI at ¶40) Almost immediately and likely even before the indictment herein was returned by the grand jury, CARLOS AVILA began cooperating with both federal and state law enforcement. As result of the cooperation of CARLOS AVILA, on November 21, 2024 (just two weeks later) the grand jury returned a superseding indictment (DE #17) which added this defendant but the case remained a six-count indictment as previously noted. Both indictments also included a forfeiture count.

The aforementioned superseding indictment added Mr. Stewart to Count 1 - the

overall conspiracy count - as well as to the substantive distribution of methamphetamine count outlined in Counts 2 through 4. CARLOS AVILA remained the lone charged defendant in Counts 5 and 6. (DE #17)

On November 27, 2024, Mr. Stewart made his initial appearance in Ft. Pierce before Magistrate Judge Maynard. (DE #33) At the defendant's request, the detention hearing was not held until December 6, 2024. After hearing the government's proffer and allowing a witness to be cross examined[1], the court ordered Mr. Stewart to be detained pending trial unlike CARLOS AVILA. (DE #44)

On January 27, 2025, Carlos Avila appeared before Magistrate Judge Maynard and entered a guilty plea to all six (6) counts of the superseding indictment pursuant to a written plea agreement (DE #74) and an agreed upon factual proffer (DE #75) with the government. (DE #73) The report and recommendation of the magistrate judge (DE #117) recommending that Mr. Avila's plea be accepted and was adopted by this Court. (DE #150)

Trial commenced for Mr. Stewart on Tuesday, February 11, 2025 before this Court at West Palm Beach. (DE #101) Trial in this matter took less than two days with the jury returning on the third day to continue their deliberations. On February 13, 2025, a note from the jury advised that "(t)here is a difference of opinion amongst

---

[1] It must be noted that Detective Seldes testified at Mr. Stewart's detention hearing as a witness for the government and therefore he was likely aware of the ongoing drug dealing of Mr. Avila since he was also the affiant in the February 27, 2025 report of the IRCSO that is attached.

jurors and we cannot get a unanimous decision/verdict." (DE #107)  Based on the jury's note, this court decided to give an *Allen* charge to the jury. (DE #108)

Shortly thereafter, the jury returned a split verdict - the defendant was convicted as to Count 1 (the overall conspiracy count) and Count 3 (methamphetamine distribution of December 28, 2023). The jury specifically found Mr. Stewart not guilty of Counts 2 and 4. The undisputed key to the conviction of the defendant was the trial testimony of Carlos Avila.

### *Newly Discovered Evidence*

#### *Preface*

Several straightforward questions are being presented by Mr. Stewart. (1) "Did Carlos Avila lie and commit perjury when he testified no longer selling drugs when he testified at trial in this case and 2) Was any government agent aware that on or before his trial testimony of February 12, 2025 that Carlos Avila was continuing to be a drug dealer, sufficient to warrant an evidentiary hearing on this Motion for New Trial pursuant to Rule 33, Federal Rules of Criminal Procedure?  It is respectfully submitted that additional discovery and an evidentiary hearing is appropriate, and the ultimate relief of a new trial, is the proper resolution of this Motion.

#### *Recent Relevant Opinion of Judge Rodolfo Ruiz II*

Before getting to the "meat of the matter" and the specific instances of perjury committed by Carlos Avila, and so it does not go unnoticed by this court, the

attention of the court and the parties should be directed to the recent order of Judge Ruiz of this district in *United States v. Agresti*, 2025 WL 346938 (S. D. Fla. January 30, 2025)  For the convenience of the court and the parties, a copy of that order is attached.  Judge Ruiz, in a case that bears remarkable similarities to the instant case, had a cooperating witness that the government conceded that without there was no chance of conviction.  The similar circumstances exist in the instant case.  Without any law enforcement surveillance of any purported transactions between Avila and Mr. Stewart, without Carlos Avila's testimony, there would have been no conviction of Mr. Stewart.

The defendant is *Agesti* moved for a new trial on identical grounds - the perjury of the lone cooperating witness.  In addition, just like in Judge Ruiz's opinion, the testimony of Carlos Avila "was material, not cumulative or impeaching, and indelibly tainted the trial."

Just as Judge Ruiz did, this court must ask the following questions: (1) Was the evidence of Carlos Avila's perjury merely impeaching or cumulative; (2) Was the evidence of Carlos Avila's perjury material; and (3) Is the evidence of Carlos Avila's perjury such that a new trial would probably produce a different outcome? Because the answer is yes to all three questions, "[t]his conviction is tainted, and there can be no other just result than to accord [Mr. Stewart] a new trial." *Mesarosh v. United States*, 352 U.S. 1, 9 (1956); *see also id.* at 14 ("The government of [a] strong and

free nation does not need convictions based upon such testimony. It cannot afford to abide with them.").

*Newly Discovered Evidence*

Based on a February 27, 2025 Indian River County Sheriff's Office report that was forwarded by the government to defense counsel and which is attached to this motion, Detective Zachary Seldes, and Customs and Border Protection Special Agent Cesar Barrientos met with a documented informant, hereinafter "CI."

Detective Seldes wrote that the CI that he had purchased a small amount of cocaine and marijuana from Avila approximately 2-3 weeks ago, sometime in early February. The CI says that he has known Avila for approximately 3 years and buys drugs from Avila once or twice a month. This undoubtedly occurred while Avila was on the federal bond in this case, while meeting with the government preparing to testify against Mr. Stewart, possibly during the trial itself.  It is unknown of the CI had previously used drugs with Avila during the relevant time periods of this case.

According to the report of Detective Sellers, the CI met with detectives and was outfitted with a live recording device, issued $70 in investigative funds, and searched prior to departing the staging location.  As directed, he met with Carlos Avila in an attempt to purchase cocaine.  After Avila was handed the money for the drugs and then, at the direction of Avila, as associate handed cocaine to the CI in a crumpled one dollar bill. The CI then met with law enforcement and surrendered the

recording, the crumpled dollar bill and the cocaine to law enforcement.

## *Carlos Avila was the Star Witness*

What makes Carlos Avila the star witness is easily ascertained from the fact that he was the codefendant and the lone cooperating witness who could testify as to the allegations contained within the indictment. According to the evidence produced at trial, only Carlos Avila was able to testify that the defendant was the purported source of the methamphetamine in the counts of conviction.

During his trial testimony (DE #137), Carlos Avila testified, unlike any other witness in the trial, that he had allegedly obtained the methamphetamine from Mr. Steward which he subsequently sold to another CI and to an undercover officer. Carlos Avila's alleged meetings with Mr. Stewart were not recorded or surveilled by law enforcement. It was his word and his word alone that any transactions with Mr. Stewart even occurred. Therefore, his testimony was under strict scrutiny by the jury.

However, the perjury on the part of Carlos Avila, in light of the attached report of the Indian River County Sheriff's Office, is beyond a reasonable doubt.

During cross examination, at page 16, the following exchange took place:

Q. Are you still selling drugs?

A. No.

Q. Are you still buying drugs?

A. No.

Q. Who is the name of your other source?

A. Mez.  (DE #137-16)

In light of the debriefing of the CI in the attached report, he purchased drugs from Carlos Avila in early February 2025.  In addition, Carlos Avila testified:

Q. Before December 12, 2023, you were selling drugs to other people besides the CI; isn't that right?

A. No.

Q. Never?

A. No.

Q. Never sold drugs before that date?

A. No.  (DE #137-17)

That statement was perjurious as well as the CI that was debriefed on February 27, 2025 reported to law enforcement "*that he has known Avila for approximately 3 years and buys drugs from Avila once or twice a month*."

Carlos Avila's perjury continued when the following exchange occurred:

Q. There were dates where you got drugs from other people, is that right, besides, as you allege, Mr. Stewart. Is that correct?

A. Just one time.

Q. Including meth?

A. Yes. Just one time.

Q. What date was that?

A. I don't remember.  (DE #137 at 15-16)

In addition, Carlos Avila testified regarding his own personal drug use aside from smoking marijuana once or twice as day as follows:

Q. So anybody who comes in here and says, Carlos Avila, between those two dates, December 2023, January 2024, using cocaine with me, they are just lying?

A. No.

Q. They are not lying?

A. No.

Q. So you did use cocaine?

A. I don't use cocaine or methamphetamine. I am a medical patient for marijuana. That's the only reason why I smoke.

While these statements are not as easy to challenge as the three other perjurious statements above, the CI could also be questioned as to the veracity of Carlos Avila's drug use.

### *Credibility was Key*

Throughout the trial the Court was cognizant of the fact that the defense was based on the credibility of one witness, Carlos Avila.  His continued dealing of drugs combined with him committing perjury on at least three occasions during the trial, is highly relevant to a jury.

No jury would believe Avila knowing he was facing multiple additionl prosecutions, violated the stringent conditions of his bond, facing an even more lengthy prison sentence, and had committed perjury by denying that he was continuing to deal drugs both while out on bond and even during the trial proceedings against Mr. Stewart. There was an incentive to hide the continued drug distribution where Mr. Avila claimed he had seen the error of his ways and was now truthful, and believable. This was false and the statements were given under oath before a jury.

### *Memorandum of Law*

The instant motion is timely under Fed. R. Crim. P. 33(b)(1) as it is being presented within three years of the February 13, 2025 jury verdict on the charges of conspiracy to possess with the intent to distribute methamphetamine, in violation of 21 U.S.C. §846 (Count 1) and one substantive distribution of methamphetamine count, in violation of 21 U.S.C. §841(a)(1) (Counts 1 and 3)

Although Mr. Stewart's appeal has not yet been filed, this Court would retain jurisdiction to consider the motion for new trial and to order discovery and an evidentiary hearing on the motion. See *United States v. Espinosa-Hernandez*, 918 F.2d 911, 913 (11th Cir. 1990)(explaining district court jurisdiction to consider motion for new trial pending appeal). If, upon consideration of the motion, the Court certifies its intention to grant relief, the court of appeals will remand the case for entry of an order granting a new trial. *United States v. Ellsworth*, 814 F.2d 613, 614 (11th Cir.

1987). In light of the appeal being not yet ripe to be filed, the defendant will be requesting that the sentencing in this matter be continued in order that the discovery process outlined above can continue.

Rule 33 provides that '[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.' Fed. R. Crim. P. 33(a). This is a "broad standard." *United v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994). The Court considers whether the verdict must be set aside in the interests of justice based on defendant's arguments. *United States v. Green*, 275 Fed. Appx. 898, 899 (11th Cir. 2008)

The Eleventh Circuit has defined the interest-of-justice standard as 'a broad standard' that 'is not limited to cases where the district court concludes that its prior ruling, upon which it bases the new trial, was legally erroneous.' *United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994). This circuit has also not been 'willing to say that there can never be a case where, even without wrongdoing, circumstances are such that the trial was, nevertheless, fundamentally unfair.' *United States v. Martinez*, 763 F.2d 1297, 1315 (11th Cir. 1985).

A defendant is entitled to a new trial based on newly-discovered evidence where he establishes that: (1) the evidence was discovered after trial; (2) the defendant exercised due diligence to discover the evidence; (3) the evidence was neither cumulative nor impeaching; (4) the evidence was material; and (5) the

evidence was of such a nature that a new trial would probably produce a new result. See *United States v. Culliver*, 17 F.3d 349, 350-51 (11th Cir. 1994); *United States v. Gates*, 10 F.3d 765, 767 (11th Cir. 1993), modified, 20 F.3d 1550 (11th Cir. 1994)).

The newly discovered evidence goes beyond impeaching the Government's star witnesses. *United States v. Slocum*, 708 F.2d 587 (11th Cir. 1983). "Newly discovered evidence need not relate directly to the issue of guilt or innocence to justify a new trial, but may be probative of another issue of law." *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006). The issue is whether the newly discovered evidence affords reasonable grounds to question the integrity of the verdict. *United States v. Scrushy*, 721 F.3d 1288, 1304 (11th Cir. 2013) (quotation marks omitted).

The Eleventh Circuit "has repeatedly stated that motions for new trial based on newly discovered evidence are highly disfavored." *United States v. Stahlman*, 934 F.3d 1199, 1230 (11th Cir. 2019). To succeed, the defendant must prove that the evidence was discovered after trial, the defendant's failure to discover the evidence was not due to a lack of diligence, the evidence "is not merely cumulative or impeaching," the evidence is "material," and the evidence would "probably produce a different result" at trial. *United States v. Markovich*, 95 F.4th 1367 (11th Cir. 2024)

### *MOTION FOR EVIDENTIARY HEARING*

CARLOS AVILA clearly and unequivocally committed perjury during the trial, and a new trial is necessary to "remove the taint" from his testimony. *United States*

*v. Espinosa-Hernandez*, 918 F.2d 911, 914 (11th Cir. 1990). An evidentiary hearing would also resolve what the Government and law enforcement knew or should have known

Before ruling on a motion for a new trial on the basis of newly discovered evidence, the Court should conduct an evidentiary hearing. *United States v. Culliver*, 17 F.3d 349 (11th Cir. 1994). This is true regardless of whether the Court is inclined to grant or deny the Motion. Id.; *United States v. Gates*, 10 F.3d 765 (11th Cir. 1993).

"A district court should grant an evidentiary hearing on a motion for new trial where the defendant offers sufficient evidence that his allegations and reports could materially have affected his trial." *United States v. Collins*, 521 Fed. Appx., 855, 861 (11th Cir. 2013) The defendant has met this standard.

WHEREFORE, the defendant DENZIL STEWART respectfully requests that this court enter an order granting him a new trial in this matter.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record this 29th day of April 2025.

Respectfully submitted,

LAW OFFICES OF PHILIP R. HOROWITZ
Attorney for Defendant STEWART
9100 South Dadeland Boulevard
Suite #1500
Miami, Florida 33156
Tel.: (305) 670-1915
E-Mail: *HorowitzDefense@aol.com*

  */s/ Philip R. Horowitz*
By: PHILIP R. HOROWITZ, ESQUIRE
Florida Bar No.: 466557